**Delno W. ANDERSON, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 95–782.**

United States Court of Veterans Appeals.

Dec. 9, 1996.

Robert M. Kampfer, Great Falls, MT, was on the brief, for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; David W. Engel, Deputy Assistant General Counsel; and Susan A. Wuchinich, were on the brief, for appellee.

Before FARLEY, HOLDAWAY, and IVERS, Judges.

IVERS, Judge:

Delno W. Anderson appeals an April 18, 1995, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for a right knee disorder and also denying his claim to reopen a previously disallowed claim for service connection for a left knee disorder. *Delno W. Anderson,* BVA 95–07864 (Apr. 18, 1995). The Court has jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court affirms the April 1995 BVA decision.

## I. FACTUAL BACKGROUND

The appellant served on active duty in the United States Army from May 10, 1957, to March 13, 1959. Record (R.) at 104. Service medical records (SMRs) are negative for any complaint or treatment of knee disorders while in service. R. at 21–96. During the appellant's medical examination prior to separation from service, no knee disorders were noted by the examining VA physician. R. at 112–13.

On April 13, 1983, the appellant submitted a VA Form 21–4138, Statement in Support of Claim (Form 21–4138), stating: "I wish to re-open my claim for increased compensation for my knee condition. I can no longer work." R. at 152. The record contains no evidence of any prior claim for service connection for a knee condition. On April 21, 1983, the VA regional office (RO) responded by sending a letter to the appellant informing him that he needed to submit evidence that showed that his disability had continuously existed since leaving the service. R. at 155.

On June 23, 1983, the appellant submitted a letter from his physician, Dr. Arthur Foreste, who described a hospital visit during which he had "popped" the appellant's knee back into place after it had "locked." R. at 157. At that time, he diagnosed the appellant as having internal derangement in the left knee but noted that no additional treatment was necessary. *Ibid.*

The RO denied the appellant's claim for entitlement to service connection for a left knee disorder on July 27, 1983. R. at 160, 162. The appellant filed a Notice of Disagreement (NOD) on August 18, 1983. R. at 165. At that time, he also submitted a copy of a June 1983 physical examination report in which the examining physician noted that the appellant suffered from long-term alcoholism, and that his "right knee seem[ed] weaker." R. at 168–69. The physician also noted, however, that the appellant's knee function and other lower extremity functions were normal. R. at 169. The RO denied the appellant's claim in September 1983. R. at 177, 179. The appellant did not appeal the RO's decision and it became final.

In April 1992, the appellant filed for service connection for disabilities in both knees, alleging that he had torn cartilage and that the knee problems had begun during his Army service. R. at 203–05. The appellant also filed another Form 21–4138 expressing his wish to reopen his claim for compensation for torn cartilage in both knees. R. at 207. The appellant submitted, in support of his claim, outpatient medical records from June 1991 through September 1992 documenting his treatment for alcoholism. R. at 213–23. These records noted no knee disorders. The RO also received a June 1992 VA medical center summary of the appellant's hospitalization for alcohol rehabilitation. R. at 229–30. The treating physician noted that the appellant complained of pain in his knees and that he had some "degenerative disease in both knees." R. at 230.

The RO denied the appellant's claim to entitlement to service connection for bilateral knee condition in September 1992. R. at 226, 233–34. The appellant filed a timely

NOD (R. at 236), perfected his appeal, and requested a hearing before the BVA (R. at 245, 248). On June 22, 1993, the appellant's service representative, William E. Comp, wrote a letter to the BVA notifying them that the appellant would be unable to attend his scheduled hearing because of illness. R. at 261. Mr. Comp wrote: "Therefore, we would appreciate it if his case can be certified for BVA and have the claim considered on it's merit [sic] at BVA in Washington, DC." *Ibid.*

During the course of the appeal, the appellant submitted a June 10, 1994, copy of a VA medical consultation report, which contained a diagnostic impression of "early patellar femoral arthritis" in both of the appellant's knees. R. at 272–73. The report also contained a notation that the x-rays of the knees were negative and that the appellant had a full range of motion in both knees. R. at 272.

The BVA did not reschedule the personal hearing and on April 18, 1995, the Board issued its decision denying the appellant's claim. *Anderson,* BVA 95–07864. The Board found that the appellant had failed to submit a well-grounded claim for his right knee disorder and also had failed to submit new and material evidence sufficient to re-open his claim for a left knee disorder. R. at 8–11. The appellant appeals this decision to the Court.

## II. ANALYSIS

### A. Claim for Right Knee Condition

■ "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a) ]." *Murphy v. Derwinski,* 1 Vet.App. at 79, 81 (1990). In *Tirpak v. Derwinski,* 2 Vet.App. 609, 610 (1992), the Court held that a claim must be accompanied by supportive evidence and that

such evidence "must 'justify a belief by a fair and impartial individual' that the claim is plausible." For a claim to be well grounded, there must be (1) a medical diagnosis of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service occurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between an in-service injury or disease and the current disability. *See Epps v. Brown,* 9 Vet.App. 341, 343–44 (1996); *Caluza v. Brown,* 7 Vet.App. 498, 506 (1995). The determination whether a claim is well grounded is a conclusion of law subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1). *See Grottveit v. Brown,* 5 Vet. App. 91, 93 (1993).

■ The BVA noted that SMRs were completely negative for any right knee disorder. R. at 9. In fact, the first diagnosis of a right knee disorder was in 1992, more than 30 years after service. R. at 230. There is no evidence to show a link between the appellant's degenerative joint disease and his military service. In the absence of any evidence that is probative of a link between disability and service, the claim is not well grounded. *See Dean v. Brown,* 8 Vet.App. 449, 455 (1995).

### B. Claim to Reopen Left Knee Condition

■ The appellant's claim for a left knee disorder was previously and finally denied on September 9, 1983. R. at 177, 179. Pursuant to 38 U.S.C. § 5108, the Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. On claims to reopen previously and finally disallowed claims, the BVA must conduct a two-step analysis. *Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). The Court has recently held in *Evans v. Brown,* 9 Vet. App. 273, 282–83 (1996), that the first step of the *Manio* two-step process involves three questions: (1) Is the newly presented evidence "new," i.e. not of record at the time of the last final disallowance? *See also Colvin v. Derwinski,* 1 Vet.App. 171, 172 (1991); (2) Is it probative of the issues at hand? *See also Colvin,* 1 Vet.App. at 174; (3) Is there a reasonable possibility that this new and pro-

bative evidence, when combined with the other evidence of record, would change the outcome on the merits? *See also Blackburn v. Brown*, 8 Vet.App. 97, 102 (1995); *Cox v. Brown*, 5 Vet.App. 95, 98 (1993).

In the second step, if the BVA determines that the evidence is new and material, it must reopen the claim and "evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old." *Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992). Whether evidence is "new and material" is a conclusion of law which this Court reviews de novo under 38 U.S.C. § 7261(a)(1). *Ibid.*

To support the reopening of his claim for service connection for a left knee disorder, the appellant submitted several documents including: (1) a November 1990 x-ray showing "very minimal arthritic changes" in the left knee (R. at 98); (2) a May 28, 1991, x-ray of the appellant's left knee which was normal (R. at 181); (3) outpatient medical records dating from June 1992 through September 1992 which document no knee disorders (R. at 213–23); (4) 1991 hospital summaries documenting the appellant's treatment for alcoholism (R. at 190–95); (5) a June 1992 medical summary noting "some degenerative disease in both knees" (R. at 229–30); (6) a June 1994 medical consultation report containing an impression of "early patellar femoral arthritis" but noting no limitation of motion in the knees (R. at 272–73); and (7) a January 1995 medical progress note indicating complaints of knee pain without limitation of motion. R. at 102.

With the exception of items numbered one and seven, which the BVA did not consider because those documents were not a part of the appellant's claim file, the Board found that none of the evidence submitted was sufficient to reopen the claim. R. at 11. The BVA found that the medical evidence did not show that the appellant's left knee condition was attributable to his service. R. at 11. The appellant's first documented complaint of knee problems occurred in 1983, approximately 24 years following his separation from service. None of the medical evidence establishes that his degenerative arthritic conditions were incurred in or aggravated by

service. *See* 38 U.S.C. § 1131; *see also Paulson v. Brown*, 7 Vet.App. 466 (1995).

As for items one and seven, the Secretary argues that those items also do not constitute new and material evidence, and therefore, any failure by BVA to consider them was harmless error. Secretary's Brief (Br.) at 8. Neither the first nor seventh item shows any nexus between an in-service injury or disease and the current disability, and therefore these items would not change the outcome on the merits. *See Cox, supra.* Taking into account the rule of prejudicial error, the Court agrees, under the facts in this case, that although the BVA's failure to consider those items was error, it did not prejudice the appellant's claim because the items did not meet the standard for new and material evidence. *See* 38 U.S.C. § 7261(b); *Booton v. Brown*, 8 Vet.App. 368, 372 (1995).

### C. Duty to Assist and Right to a Hearing

Since the appellant has presented neither a well-grounded claim for service connection for a right knee condition nor new and material evidence to reopen his claim for a left knee condition, the statutory duty to assist under 38 U.S.C. § 5107(a) does not attach. *See Gregory v. Brown*, 8 Vet.App. 563, 568 (1996); *West v. Brown*, 7 Vet.App. 70, 74–75 (1994); *Ivey v. Derwinski*, 2 Vet. App. 320, 322–23 (1992).

The appellant argues that he had a constitutional and statutory right to a hearing and that BVA breached its duty to assist when it failed to reschedule his hearing after it had been notified by his service representative that he could not attend because of illness. Appellant's Br. at 6–11; R. at 277. Although the appellant has a right to a personal hearing under the regulations (*see* 38 C.F.R. § 20.700(a)), the letter from the service representative must be interpreted as a waiver of that right.

Under the provisions in the VA regulations:

[I]f a veteran fails to appear for a scheduled Travel Board hearing and a request for postponement has not been received and granted, the case will be processed as though the request for a hearing had been

withdrawn.... A motion for a new hearing date following a failure to appear must be in writing, must be filed within 15 days of the originally scheduled hearing date, and must explain why the appellant failed to appear and why a timely request for a new hearing date could not have been submitted.

38 C.F.R. § 20.704(d)(1995). In order to change the scheduled hearing date, the appellant must show good cause and submit a request in writing that explains why a new hearing date is necessary. 38 C.F.R. § 20.704(b). Under the regulations, examples of "good cause" include illness of the appellant, difficulty in obtaining necessary records, or unavailability of a necessary witness. *Ibid.*

The service representative's letter to the BVA contained no specific request for a change in the hearing date. In the letter, the representative asked that VA certify the case for appeal and requested that the BVA proceed with considering the appellant's claim on the merits. R. at 261. This language signifies that the appellant wished his appeal to proceed. In addition, there is no record that the appellant or his representative filed a written motion for a new hearing date, under the requirements set forth in 38 C.F.R. § 20.704(d).

By filing VA Form 21–22, the appellant authorized his service representative to act on his behalf. Supplemental R. at 1. Under the law of agency, the appellant is bound by the acts of his service representative. *See Brown v. Brown,* 8 Vet.App. 40 (1995). Based upon the language in the letter, the Board could reasonably construe the representative's request as the appellant's waiver of his right to a hearing.

## III. CONCLUSION

Accordingly, the Court AFFIRMS the Board's April 18, 1995, decision.