IVERS, Judge,
concurring in part and dissenting in part:
I concur in the Court’s opinion in parts I, II, III.D., and IV, but dissent from the Court’s opinion in parts III.A.1, 2.a. and b., and B. and C.
As aptly put by Justice Stevens:
The maxim that “hard cases make bad law” may also apply to easy cases. As I shall explain, this case could easily be decided by the straightforward application of well-established precedent.... Any proper concern about the danger that [an] opinion might be interpreted too expansively would be more appropriately addressed in a case that was either incorrectly decided or that at least raised a close or difficult question. In my judgment it is most unwise to use this case as a vehicle for substitution of a rather open-ended attempt to define [the legal issues in question] that trouble the Court.
Hudson v. United States, 522 U.S. 93, at 106-07, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (Stevens, J., concurring). Such is the case here. Having determined that the appellant is entitled to a remand pursuant to Spencer v. Brown, 4 Vet.App. 283 (1993), in part III.D., the Court need go no further.
This Court has discussed the need to address multiple errors when remanding a case.
It has been the practice of this Court from the outset that, as a general rule, when an undoubted error requires that the Court order a remand, the Court will not address other putative errors raised by the appellant that are not necessary in effecting the proposed disposition. In short, if the proper remedy is a remand, there is no need to analyze and discuss all the other claimed errors that would result in a remedy no broader than a remand. In Best v. Principi, 15 Vet.App. 18 (2001) (per curiam order), the Court noted that it generally decides eases on the narrowest possible grounds, and therefore is not required to rule upon other allegations of error....
Mahl v. Principi, 15 Vet.App. 37, 38 (2001) (per curiam order). The Court further instructed that “[considering only the issues necessary to the disposition of the case, or, in other words, deciding a case on the narrowest possible grounds, is the tradition in general appellate practice.” Id. In Best v. Principi, the Court also stated:
The Court’s practice of limiting its opinions to the issue necessary to effect a remand is consistent with the jurisdictional statute under which the Court operates. That statute states that “in any action brought under this chapter, the Court of Appeals for Veterans Claims, to the extent necessary to its decision and when presented shall ... (1) decide all questions of law.” 38 U.S.C. § 7261(a) (emphasis added). Of course, within the statutory definition of “to the extent necessary,” there may be appropriate circumstances that would cause the Court, in its discretion, to touch upon another issue, whether raised by the appellant or not.
Best, 15 Vet.App. at 20.
Not all Board errors are of equal gravity. However, the majority’s analysis presumes that they are. By addressing a purported VCAA notice error before acknowledging the Board’s more significant failure to adjudicate the appellant’s claim as a new claim in violation of Spencer, supra, the majority has reversed the order of importance of the Board’s errors in its analysis. The Board’s Spencer error re *128 quired the appellant to overcome the significant hurdle of presenting new and material evidence before his final decision could be reopened and readjudication could take place. See 38 U.S.C. § 5108; 38 C.F.R. § 3.156(a) (2003). He would also not be entitled to all the assistance given a claimant filing a new claim. See Paralyzed Veterans of Am. v. Sec’y of Veterans Affairs, 345 F.3d 1334 (Fed.Cir.2003) (holding that the Secretary’s regulation excluding claims to reopen from mandatory medical examinations is valid, and that “in the absence of new and material evidence, VA is not required to provide assistance to a claimant attempting to reopen a previously disallowed claim, including providing a medical examination or obtaining a medical opinion,” inter alia). Since the proper remedy for the failure to adjudicate the appellant’s claim as a new one is remand, there is no need to analyze and discuss any other error that would result in a remedy no greater than a remand. Best, supra.
Clearly, the notice provisions of the VCAA are currently in a partial state of flux. See section 701 of the Veterans Benefits Act of 2003 (VBA), Public Law 108-183, 117 Stat. 2651 (Dec. 16, 2003) and proposed regulation Board of Veterans’ Appeals: Obtaining Evidence and Curing Procedural Defects, 68 Fed.Reg. 69,062, 69,065 (Dec. 11, 2003), which will be applicable to any readjudication of the appellant’s claim below. On remand, the appellant will also be free to submit additional evidence and argument on the remanded claims in accordance with Kutscherousky v. West, 12 Vet.App. 369, 372-73 (1999) (per curiam order), and the Secretary will be required to address all applicable law and regulation, to include those regulations addressing notice and the requirements of the VCAA.
I agree with the majority’s assertion that the plain language of section 5103(a) requires that the Secretary give the claimant appropriate notice “[ujpon receipt of a complete or substantially complete claim.” That is obvious to all. However, the majority assumes that, under Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), because “Congress has directly spoken to the precise question at issue” and “the intent of Congress is clear, that is the end of the matter.” Ante at 119. Unfortunately, the intent of Congress on the key question in this case is anything but clear. The key question here is how does the Secretary address a situation where the claim was adjudicated prior to the passage of the VCAA making compliance with the timing requirement of the plain language of section 5103(a) impossible? The language of section 5103 is silent regarding that circumstance. When reviewing an agency’s construction of a statute that it administers, the Court first determines “whether Congress has directly spoken to the precise question at issue.” Chevron, 467 U.S. at 842, 104 S.Ct. 2778. If the law governs the question under consideration, this Court “must give effect to the unambiguously expressed intent of Congress.” Id. at 843, 104 S.Ct. 2778. If, however, the statute does not directly address the issue, the Court then must determine whether the administering agency properly promulgated an interpretative regulation “based on a permissible construction of the statute.” Id. The Court may defer to the VA’s reasonable interpretation of a statutory provision when the law does not directly address the precise question at issue, in other words, when the law leaves “a gap for an agency to fill.” Id. (“ ‘The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of *129 rules to fill any gap left, implicitly or explicitly, by Congress.’ ”) (quoting Morton v. Ruiz, 415 U.S. 199, 231, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974)); cf. Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (holding that interpretive doubt must be resolved in favor of the veteran). There is a conflict between the requirements of Chevron and Gardner, both supra, in the context of the review of VA regulations. However, the. Court should at least provide the Secretary with an opportunity to promulgate a regulation for the Court to review in light of Chevron and Gardner, both supra, rather than engaging in speculative interpretation. Congress did not address what should be done when proper VCAA notice does not precede an initial unfavorable RO decision. As conceded by the majority, the Secretary is in the process of filling that gap. The Court need not intercede in an area that is solely the province of the Secretary.
Despite having no compelling reason to do so, the majority has chosen to enter into a regulatory thicket recently visited by the Federal Circuit, and to some degree, by Congress. See Disabled Am. Veterans v. Sec’y Veterans Affairs, 327 F.3d 1339 (Fed.Cir.2003) [hereinafter DAV] and VBA section 701. The majority unnecessarily instructs the Secretary on the applicability, timing, and content of the VCAA duty-to-notify provisions as well as the issues of prejudice to the appellant and adjudication on remand.
The Federal Circuit invalidated regulation § 19.9(a)(2) (2002) in DAV, holding that
38 C.F.R. § 19.9(a)(2) is invalid because, in conjunction with the amended rule codified at 38 C.F.R. § 20.1304, it allows the Board to consider additional evidence without having to remand the case to the AOJ for initial consideration and without having to having to obtain the appellant’s waiver. That is contrary to the requirement of 38 U.S.C. § 7104(a) that “[a]ll questions in a matter which ... is subject to decision by the Secretary shall be subject to one review on appeal to the Secretary.”
DAV, 327 F.3d at 1341. The Federal Circuit observed that the amendment to 38 C.F.R. § 20.1304 (2002) eliminated the requirement in 38 C.F.R. § 20.1304(c) (2001) that unless the appellant waived consideration by the RO the Board must refer evidence not considered by the RO to the RO. Id. at 1345-46. The Federal Circuit, in its criticism and analysis of §§ 19.9(a) and 20.1304(2002), did not foreclose the ability of the Board to cure a procedural error made at the RO level. Rather, they found the absence of the ability of an appellant to choose between remand to the RO or proceeding before the Board to. be problematic. The Secretary was given the opportunity to redraft the invalidated regulation and the Secretary is now in the process of doing so. Even the majority concedes that “it appears that VA is in the process of developing a system to govern the provision of such notice and any subsequent necessary adjudication for cases such as this one.” Ante at 122. The majority then continues on, opining in great detail, on the very issues that the Secretary has made the subject of current rulemaking. See Board of Veterans’ Appeals: Obtaining Evidence and Curing Procedural Defects, 68 Fed.Reg. at 69,065. The VA General Counsel has also issued a General Counsel Precedent Opinion addressing the impact of DAV upon the Board’s ability to cure section 5103(a) notice defects at the Board level. See VA Gen. Coun. Prec. 1-2003 (May 21, 2003). Neither the proposed regulation nor the precedential opinion are currently before the Court. The Court need not now insert itself into the regulatory process, the sole province of the Secretary under 38 U.S.C. *130 § 501. While it would generally be appropriate for this Court to address and invalidate a regulation, in this case the Federal Circuit in DAV, supra, has invalidated that regulation. The Secretary should be allowed the opportunity to fix the problem before this Court directs a solution. Instead, the majority provides the Secretary with unnecessary counsel on the ongoing regulatory process.
Furthermore, parts III.A.1, 2.a and b and B and C of the opinion contain nothing necessary to the disposition of this case. They are, therefore, at best, dictum. Blacic’s Law Dictionary defines “obiter dictum,” commonly referred to as “dicta,” as “[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive).” Black’s Law Dictionary 1100 (7th ed.1999). The majority concedes as much by observing “[ajlthough the Court need not reach a conclusion as to the proper remand process at this time, we make the following observations.” Ante at 123. It then proceeds to make detailed observations as to what it sees as the correct path for regulatory revision. Section 501, of title 38 of the U.S.Code assigned that duty to the Secretary.
Regarding dicta, this Court has observed:
The danger of ... dicta is that, although theoretically and technically not binding, practically, they give the appearance of carrying the cloak of judicial acceptance. As one scholar has stated, “Much depends on the character of the dictum. Mere obiter may be entitled to little weight, while a carefully considered statement ..., though technically dictum, must carry great weight, and may even ... be regarded as conclusive.” Charles A. Wright & Mary K. Kane, The Law of Federal Courts § 58, at 374 (4th ed.1983); see also McCoy v. [Mass. Inst of Tech.], 950 F.2d 13, 19 (1st Cir.1991) (giving effect to considered dictum of the Supreme Court).... Through its dicta, the majority seeks to dictate the result of any remand to the Board.
Lasovick v. Brown, 6 Vet.App. 141, 153 (1994) (Ivers, J., concurring in part, dissenting in part). Such is the case here. The majority’s discussion runs afoul of “[t]he danger of ... dicta [which] is that, although theoretically and technically not binding, practically, they give the appearance of carrying the cloak of judicial acceptance,” as noted in Lasovick, 6 Vet.App. at 153. Certainly, the majority has put the Secretary on notice as to what it believes a regulation in compliance with section 5103(a) must look like. The Court can and should decide this appeal on the narrowest grounds in accordance with general appellate practice by remanding the matter for readjudication pursuant to Spencer, supra. This is especially so in light of the abundant evidence that both the Secretary and Congress are addressing the defects identified in DAV, supra, and in light of the fact that none of the results of those efforts is now before the Court.
As Justice Stevens stated, in concurring only in the judgment in Hudson, supra:
It is of course, entirely appropriate for the Court to perform a lawmaking function as a necessary incident to its Article III responsibility for the decision of “Cases” and “Controversies.” In my judgment, however, a desire to reshape the law does not provide a legitimate basis for issuing what amounts to little more than an advisory opinion that, at best, will have the precedential value of pure dictum....
Hudson, 522 U.S. at 112, 118 S.Ct. 488 (Stevens, J., concurring). Justice Stevens went on to express great concern with the *131 constitutional ramifications of the Supreme Court’s majority opinion. His caution is well taken here. If, as I believe to be the case, the majority opinion here is dicta, then its direction to the Secretary amounts to little more than an advisory opinion and should be given the precedential value appropriate to that category of judicial utterance. For the reasons stated above, I respectfully dissent.